IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| INTERNET SERVICES, LLC, a California Limited Liability Company,<br><br>        Plaintiff,<br><br>    v.<br><br>IMMERSION CORPORATION, a Delaware corporation,<br><br>        Defendant.<br>_____/ | No. C 06-2009 CW<br><br>ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT |

    Defendant Immersion Corporation has filed a motion for summary judgment in its favor on Plaintiff's claims against it and on its first counter-claim for declaratory relief.  Plaintiff Internet Services, LLC (ISLLC) opposes the motion.  The motion was heard on May 15, 2008.  Having considered the parties' papers and oral argument, the Court grants Defendant's motion.

                            BACKGROUND

    On December 31, 2000, Immersion and ISLLC entered into a License and Technology Agreement (Software License), which allowed

1  ISLLC to develop software for its customers to provide haptic
2  capability to websites.[1]  The Software License states that

>   ISLLC intends to provide services in the field of
>   enhancing web sites to use IMMERSION technology.  The
>   parties believe that the enhancement of web sites with
>   the IMMERSION TECHNOLOGY will increase sales of
>   IMMERSION TECHNOLOGY-enabled devices leading to
>   increased revenues for IMMERSION.

Complaint, Ex. A.  Therefore, Immersion granted to ISLLC

>   a worldwide, royalty bearing, sublicensable right and
>   license under the IMMERSION IP to make, have made,
>   use, sell, import, offer for sale, copy, prepare
>   derivative works based on, perform and otherwise
>   utilize the IMMERSION IP and IMMERSION TECHNOLOGY to
>   provide haptic capability to websites.  With respect
>   to all CONTENT-RESTRICTED WEBSITES, such license shall
>   be exclusive.

Id.  The Software License defined "content-restricted websites" as "websites access to which is restricted to users who certify that they are at least 18 years of age."  Id.

Shortly after entering into the agreement, Immersion and ISLLC began discussing amendments to the Software License to allow ISLLC to add haptic capability to other types of media.  At the end of January, 2001, the parties amended the Software License to grant an exclusive license with respect to "content-restricted material." In turn, the Amended Software License defined "content-restricted material" as:

>   (i) websites or webpages access to which is age
>   restricted to users who certify that they are at least
>   18 years of age; (ii) chatrooms and other on-line
>   communications whose topics or images are age
>   restricted; or (iii) any other forms of technology
>   including, by way of example only but not limited to,
>   DVD's, CR-Roms [sic], videos, television and games,
>   whether or not appearing as part of a website or

---

[1] Haptics are tactile sensations.

2

> webpage, that have content which if it appeared on a website would fall within (i) or (ii) above.

Complaint, Ex. C.  The Amended Software License also stated,

> Nothing in this agreement shall be construed as granting by implication, estoppel or otherwise any licenses or rights under patents, copyrights or other intellectual property rights of IMMERSION other than those expressly granted herein, including, but not limited to, rights to make, have made or sell hardware devices of any type or nature except where such hardware is purchased from IMMERSION or its licensees. Notwithstanding this limitation, the parties agree to negotiate in good faith for IMMERSION to grant to ISLLC the right to make or have made devices for use with the applications they create.

Id.

On March 9, 2001, Immersion and ISLLC entered into a separate Hardware License Agreement (Hardware Agreement), through which Immersion granted ISLLC non-exclusive rights under Immersion's patents.

On January 27, 2006, ISLLC filed this case in Santa Clara County Superior Court, seeking a declaration of its rights pursuant to the licensing agreements entered into with Immersion, particularly with respect to the $82 million in damages awarded to Immersion in Immersion Corporation v. Sony Computer Entertainment America, Inc., et al., C 02-710.  ISLLC also alleged claims for breach of contract, promissary fraud and unjust enrichment. Immersion removed the case to this Court.

Immersion filed counterclaims, seeking a declaration that ISLLC is not entitled to any of the damages awarded to Immersion in the Sony case and stating claims for breach of contract, breach of the covenant of good faith and fair dealing and rescission, based on ISLLC's failure to bring to market any product using Immersion's

3

technology.

The Court granted Immersion's motion for judgment on the pleadings with respect to ISLLC's claims for declaratory judgment and unjust enrichment. Immersion now moves for summary judgment on the remaining claims.

## LEGAL STANDARD

Summary judgment is properly granted when no genuine and disputed issues of material fact remain, and when, viewing the evidence most favorably to the non-moving party, the movant is clearly entitled to prevail as a matter of law. Fed. R. Civ. P. 56; Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Eisenberg v. Ins. Co. of N. Am., 815 F.2d 1285, 1288-89 (9th Cir. 1987).

The moving party bears the burden of showing that there is no material factual dispute. Therefore, the court must regard as true the opposing party's evidence, if supported by affidavits or other evidentiary material. Celotex, 477 U.S. at 324; Eisenberg, 815 F.2d at 1289. The court must draw all reasonable inferences in favor of the party against whom summary judgment is sought. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Intel Corp. v. Hartford Accident & Indem. Co., 952 F.2d 1551, 1558 (9th Cir. 1991).

Material facts which would preclude entry of summary judgment are those which, under applicable substantive law, may affect the outcome of the case. The substantive law will identify which facts are material. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

4

Where the moving party does not bear the burden of proof on an issue at trial, the moving party may discharge its burden of production by either of two methods. <u>Nissan Fire & Marine Ins. Co., Ltd., v. Fritz Cos., Inc.</u>, 210 F.3d 1099, 1106 (9th Cir. 2000).

> The moving party may produce evidence negating an essential element of the nonmoving party's case, or, after suitable discovery, the moving party may show that the nonmoving party does not have enough evidence of an essential element of its claim or defense to carry its ultimate burden of persuasion at trial.

<u>Id.</u>

If the moving party discharges its burden by showing an absence of evidence to support an essential element of a claim or defense, it is not required to produce evidence showing the absence of a material fact on such issues, or to support its motion with evidence negating the non-moving party's claim. <u>Id.</u>; <u>see also</u> <u>Lujan v. Nat'l Wildlife Fed'n</u>, 497 U.S. 871, 885 (1990); <u>Bhan v. NME Hosps., Inc.</u>, 929 F.2d 1404, 1409 (9th Cir. 1991).  If the moving party shows an absence of evidence to support the non-moving party's case, the burden then shifts to the non-moving party to produce "specific evidence, through affidavits or admissible discovery material, to show that the dispute exists." <u>Bhan</u>, 929 F.2d at 1409.

If the moving party discharges its burden by negating an essential element of the non-moving party's claim or defense, it must produce affirmative evidence of such negation. <u>Nissan</u>, 210 F.3d at 1105. If the moving party produces such evidence, the burden then shifts to the non-moving party to produce specific

5

1  evidence to show that a dispute of material fact exists.  Id.
2      If the moving party does not meet its initial burden of
3  production by either method, the non-moving party is under no
4  obligation to offer any evidence in support of its opposition.  Id.
5  This is true even though the non-moving party bears the ultimate
6  burden of persuasion at trial.  Id. at 1107.

## DISCUSSION

8      ISLLC's breach of contract claim is based on its asserted
9  entitlement to the compulsory license payments Immersion received,
10 as a result of its litigation with Sony, for games rated "M" for
11 "mature" by the Entertainment Software Ratings Board (ESRB).
12 Immersion argues that this claim fails because the license provides
13 ISLLC with rights only to those products that are "age restricted
14 to users who certify that they are at least 18 years of age" while
15 M-rated games are recommended to those 17 and over.
16     Immersion contends that the use of the term "age restricted"
17 in subsection (ii) of the definition of content-restricted material
18 is a shorthand reference to the longer definition, including the
19 requirement that users certify that they are at least eighteen
20 years of age, contained in subsection (i).  ISLLC counters that the
21 plain language of subsection (ii) does not incorporate the
22 limitation to those who certify that they are at least eighteen
23 contained in subsection (i).  ISLLC points out that the contract
24 includes definitions for several terms, but does not define "age
25 restricted."  Therefore, ISLLC contends that "age restricted"
26 refers to any content "restricted on the basis of age, without any
27 limitation as to any particular age."  Gordon Decl., Ex. 8 at 5.

6

However, as Immersion argues, such an interpretation would render the term "age restricted" virtually meaningless. As ISLLC concedes, its definition of the term would include content restricted to those over any age, whether eighteen years of age or five years of age. Such a reading is not plausible. ISLLC was not and has never been in the business of generating materials for children. At argument, ISLLC's counsel asserted that, as a practical matter, ISLLC was not arguing it could collect based on any age restriction. However, ISLLC's intentions do not undermine the need for the terms of the contract to have meaning.

ISLLC also argues that certain amendments, which Immersion proposed in 2003 but were not accepted by ISLLC, tend to support ISLLC's broad interpretation of the term age restricted. Among other things, Immersion proposed an amendment to subsection (ii), which would have limited the scope of the license to cover only "<u>sexually explicit</u> chatrooms and other on-line communications whose topics or images <u>may be lawfully provided to users who certify that they are at least 18 years of age</u>." Britton Decl., Ex. 1 (proposed amendments underlined). Although Immersion offered compensation for the proposed amendments, the amendments went well beyond adding the language requiring users to "certify that they are at least 18 years of age." As quoted above, the amendments also added a limitation of the definition of "content-restricted material" to "sexually explicit" materials. Moreover, the amendments proposed specific limitations to ISLLC's ability to assign its rights under the contract, including a provision that "ISLLC may not assign any of its rights or obligations to any Sony or Nintendo entity

7

worldwide." The fact that Immersion, in an abundance of caution, thought it advisable to clarify further that age-restricted meant limited to those who certify that they are at least eighteen years of age does not establish that such was not its meaning in the first place.

Finally, ISLLC argues that the reference in subsection (iii) to technology that "would fall within (i) or (ii) above" would be redundant if the age limitations in subsection (i) and (ii) were identical. This minimal redundancy is not sufficient to create a triable question of fact with respect to the meaning of the contract. It remains that Immersion's proposed construction is eminently reasonable while ISLLC's proposed construction renders the contract virtually meaningless. Such an interpretation cannot stand.

It is undisputed that none of the games for which Sony paid Immersion a compulsory license fee are restricted to persons aged eighteen or older. ISLLC's breach of contract claim must fail.

Because ISLLC's breach of contract claim fails as a matter of law, its claims for promissory fraud and a constructive trust fail for the same reason.

CONCLUSION

For the foregoing reasons, the Court GRANTS Immersion's motion for summary judgment in its favor on ISLLC's claims against it and on its first counterclaim for declaratory relief (Docket Nos. 93, 146).

As discussed at the hearing, the parties shall continue to try to resolve Immersion's remaining counterclaims. If, within two

8

weeks, the parties are unable to resolve the case, they shall return to Judge Weinstein, or one of his associates, for a further mediation.  Decision-makers from both ISLLC and Adult Entertainment Broadcast Network, as well as Immersion shall be present at the mediation.  The parties shall immediately schedule a time with Judge Weinstein, which can be cancelled in the event the parties reach an agreement.

If the parties still are unable to reach an agreement, a four-day trial on Defendant's counterclaims will begin on Monday, August 25, 2008 at 8:30 AM.  The trial will not be postponed unless Plaintiff's counsel renews its motion to withdraw, the motion is granted and Plaintiff is unable to retain new counsel before the trial date.  If Plaintiff's counsel does not renew its motion to withdraw, or if the motion is renewed and denied, the case will proceed to trial as scheduled.

IT IS SO ORDERED.

Dated:  5/16/08

CLAUDIA WILKEN
United States District Judge

9